1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

11

12

13

14

15

16

17

18

| TRACIE MEYERS, | ) | Case No. CV 17-03457-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | |
| v. | ) | |
| | **)** | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

19

20

**PROCEEDINGS**

21

22

23

24

25

26

27

On May 8, 2017, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 14, 19). On September 26, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 16-17). The parties

28

---

[1]    Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration and is substituted in for Acting Commissioner Caroyln W. Colvin in this case. See 42 U.S.C. § 205(g).

filed a Joint Stipulation ("Joint Stip.") on December 18, 2017, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 18).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On February 9, 2011, Plaintiff, formerly employed as a customer service person for telecommunications and recreational vehicle sales companies and as a service writer for an automobile mechanic (see AR 51-52, 72, 336), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since October 22, 2010. (See AR 290-92). The Commissioner denied Plaintiff's application initially on June 28, 2012 and on reconsideration on July 10, 2012 (AR 107-112, 159-64).

On June 3, 2013, the Administrative Law Judge ("ALJ"), Dale A. Garwal, heard testimony from Plaintiff, who was represented by counsel, and vocational expert ("VE") Kristin Cicero. (See AR 49-67). On June 21, 2013, the ALJ issued a decision denying Plaintiff's application. (See AR 135-43). After determining that Plaintiff had severe impairments -- "generalized anxiety disorder, and degenerative disc disease

of the cervical and lumbar spine" (AR 138)[2] -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 138-39), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform sedentary work[4] with the following limitations: lifting/carrying 5 pounds frequently and 10 pounds occasionally; standing/walking for 2 hours and sitting for 6 hours in an 8-hour workday; bending/stooping occasionally; pushing/pulling with the nondominant left upper extremity occasionally; and limited to simple routine tasks with occasional public and co-worker contact. (AR 139-41). The ALJ then determined that Plaintiff was not able to perform any past relevant work (AR 141), but could perform jobs existing in significant numbers in the national economy, and was therefore not disabled within the meaning of the Social Security Act. (AR 142-43).

Plaintiff requested that the Appeals Council review the ALJ's decision. (See AR 203). On November 24, 2014, the Appeals Council vacated the ALJ's decision and remanded the

---

[2]    The ALJ found that Plaintiff's other impairments -- Hepatitis C, obesity and knee discomfort -- were nonsevere. (AR 138).

[3]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[4]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

matter in order for the Administrative Law Judge to do the following:

> (1) "Update the record" to "include, as available, records from the claimant's treating and examining sources, medical opinions about what the claimant could still do despite her impairments, singly and in combination"; (2) "Give consideration to the third party statement of Karen Lopez"; (3) "Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations"; and (4) "If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.]" (See AR 148-50).

On April 6, 2016, the ALJ heard testimony from Plaintiff, who was represented by counsel, and VE Sharon Spaventa. (See AR 70-79). On June 8, 2016, the ALJ issued a decision denying Plaintiff's application. (See AR 24-34). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since October 22, 2010, the alleged onset date. (AR 27). At step two, the ALJ determined that Plaintiff had the following severe impairments: "lumbar and cervical degenerative disc

disease, and generalized anxiety disorder" (AR 27).[5]  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations (AR 27-28).  The ALJ found that Plaintiff had the RFC to perform sedentary work with the following limitations:

> lifting 5 pounds frequently and 10 pounds occasionally; standing for 2 hours and sitting for 6 hours in an 8-hour workday; bending and stooping occasionally; "occasional use of the nondominant left upper extremity for pushing/pulling"; occasional public and co-worker contact; and limited to simple routine tasks.  (AR 28-33).

At step four, the ALJ determined that Plaintiff was not able to perform any past relevant work (AR 33).  At step five, the ALJ found, based on the testimony of VE Cicero at the June 3, 2013 hearing, that Plaintiff could perform jobs existing in significant numbers in the national economy, namely, inspector (Dictionary of Occupational Titles ("DOT") 669.687-014) and sorter (DOT 521.687-086) (AR 34).  As a result of these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Id.).

---

[5]     The ALJ found that Plaintiff's other impairments -- Hepatitis C, obesity, headaches and knee discomfort -- were nonsevere, and that Plaintiff's migraines did not meet the durational requirements.  (AR 27).

The Appeals Council denied Plaintiff's request for review of the ALJ's Decision on March 20, 2017. (See AR 1-3, 19). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ failed to properly assess: (1) the opinion of consultative examiner, Dr. Moore; and (2)

the opinion of consultative examiner, Dr. Moore, to the extent that the ALJ discredited Plaintiff's testimony regarding handling and fingering limitations. [6] (<u>See</u> Joint Stip. at 3-6, 10-13, 17).

## DISCUSSION

After consideration of the record as a whole, the Court finds that
the Commissioner's findings are supported by substantial evidence and
are free from material legal error.

**A.   The ALJ's Error in Assessing the Opinion of Examining Physician, Robert Moore, M.D., was Harmless**

Plaintiff asserts that the ALJ erred in failing to address the opinion of examining physician, Dr. Moore, about Plaintiff's left upper extremity limitations, and that such error was not harmless.   (<u>See</u> Joint Stip. at 3-6, 10-11). Defendant concedes that the ALJ erred in failing to address Dr. Moore's opinion about Plaintiff's upper left extremity

---

[6] Although Plaintiff characterizes her second claim as a challenge to the ALJ's adverse credibility determination, Plaintiff is only contesting the ALJ's rejection of her testimony regarding symptoms causing handling and fingering limitations as a basis for failing to properly assess Dr. Moore's opinion regarding those limitations. (<u>See</u> Joint Stip. at 17).   However, the record does not support Plaintiff's claim. The ALJ did not fail to assess Dr. Moore's limitations based on an adverse credibility determination regarding Plaintiff's testimony. Therefore, Plaintiff's second claim appears to be a reassertion of her first claim and will not be separately addressed. (<u>See</u> Joint Stip. at 12-13, 17).

limitations, but asserts that the error was harmless. (See Joint Stip. at 6-10). The Court agrees.

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Lester v. Chater, 81 F.3d at 830-31. If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester v. Chater, supra.

On June 25, 2012, Robert A. Moore, M.D., prepared a report following a complete neurological evaluation of Plaintiff. (See AR 505-09). Based on Plaintiff's complaints/statements (see AR 505), a review of Plaintiff's medical records and Plaintiff's medical, family and social history (see AR 506), the results of a physical examination (see AR 506-07), and the results of a neurological

examination (see AR 507-08, Dr. Moore diagnosed Plaintiff with "[m]ild cervical spondylosis with possible associated left C5 radiculopathy," "[b]iomechancial low back pain" and "[m]uscle contraction headaches." (See AR 508). Dr. Moore opined that Plaintiff had the following limitations: with respect to Plaintiff's left arm, she "can occasionally but not frequently or continuously push and pull" and "she would have slight difficulty operating hand controls and moderate difficulty using tools"; with respect to Plaintiff's left hand and fingers, "[s]he can perform frequent simple gripping and distal fine coordinated movements"; Plaintiff has unrestricted use of the right upper extremity; Plaintiff can stand and walk for 6 hours out of an 8-hour workday, in 2-hour intervals; Plaintiff can sit on an unrestricted basis; Plaintiff can bend and stoop frequently; Plaintiff can operate foot controls; Plaintiff is cognitively intact; and Plaintiff "would have difficulty lifting and carrying more than 25 pounds on an occasional basis and 10 to 10 pounds on a more frequent basis." (See AR 508).

The ALJ summarized Dr. Moore's report, including Dr. Moore's opinion. (See AR 30). After summarizing most of the medical evidence and Plaintiff's testimony, and after stating that "[t]he established residual functional capacity addresses the claimant's left upper extremity limitation as credibly evaluated by consultative examiner Dr. Moore, indicating occasional overhead reaching with the nondominant left upper extremity" (see AR 31-32), the ALJ stated: "The

medical opinion of consultative examiner Dr. Moore is fully credible and given great weight based upon supportability with medical signs and laboratory findings, and consistency with the record (Exhibit 6F) including the minimal findings of Drs. Musaffer (Exhibit 21F) and Dr. Ellie Rogers (Exhibit 15F) of the claimant's treating facility who declined to prescribe medications sought by the claimant."  (AR 32).

As Defendant concedes (see Joint. Stip. at 6), the ALJ erred by failing to address Dr. Moore's opinions that Plaintiff can perform frequent simple gripping and distal fine coordinated movements with her left hand and fingers and that Plaintiff would have slight difficulty operating hand controls and moderate difficulty using tools with her left arm in the determination of whether Plaintiff could perform other jobs.

The issue, as both Defendant and Plaintiff acknowledge (see Joint Stip. at 5-11) is whether the ALJ's error was harmless.  An ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'" Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)(citation omitted); see also Carmickle v. Commissioner, 533 F.3d 1155, 1162 (9th Cir. 2008)("[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, . . ., it is whether the ALJ's decision remains legally valid, despite such error."); Burch v. Barnhart, 400

F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless.").

Plaintiff concedes that the ALJ's failure to address Dr. Moore's opinion that Plaintiff can perform "distal fine coordinated movements with [her] left hand and fingers" is harmless error, because Plaintiff likely can still meet the requirements of the jobs that the ALJ found Plaintiff could do (inspector, Dictionary of Occupational Titles ["DOT"] 669.687-014 [requires occasional fingering]; sorter, DOT 521.687-086 [requires frequent fingering])(see AR 34). (See Joint Stip. at 5). Consequently, this aspect of Dr. Moore's opinion is not at issue. However, Plaintiff contends that Dr. Moore's opinion that Plaintiff "can perform frequent simple gripping" with "the left hand and fingers" renders Plaintiff unable to perform these jobs because they require "frequent handling," which is more than "simple gripping." (Joint Stip. at 5).

Respondent asserts that the ALJ's error was harmless, because (1) the record as a whole, i.e., Dr. Moore's physical and neurological examinations of Plaintiff, a Sierra Vista Family Medical Clinic progress note dated November 29, 2012, a Clinicas note dated July 25, 2014, physical examinations of Plaintiff on August 14, 2013, September 4, 2013, December 4, 2013, January 13, 2015, January 27, 2015, and July 25, 2014, and an x-ray of Plaintiff's left shoulder dated June 15, 2011 fails to support Dr. Moore's opinions about Plaintiff's

limitations with her left upper extremity in gripping, operating hand controls and using tools (see Joint Stip. at 6-7, citing AR 482, 506-08, 559-60, 567, 571, 596, 604, 620, 635, 690); (2) Doctor Moore's opinion that Plaintiff is limited to "frequent simple gripping" with her left hand is not inconsistent with the requirement of both jobs the ALJ found that Plaintiff could do (inspector, DOT 669.687-014; sorter, DOT 521.687-086) (see AR 34), and alternatively, Plaintiff is able to perform the frequent handling requirements of both jobs based on the unrestricted use of her right upper extremity; and (3) Doctor Moore's opinion that Plaintiff "would have slight difficulty operating hand controls and moderate difficulty using tools" with her left arm is not inconsistent with the requirement of both jobs the ALJ found Plaintiff could do, and alternatively, Plaintiff is able to perform these functions based on the unrestricted use of her right upper extremity (see Joint Stip. at 8-9).

Although Defendant cites evidence to support her contention that the record did not support Dr. Moore's opinion about Plaintiff's left upper extremity limitations as to gripping, operating hand controls and using tools, there is no indication that the ALJ considered Dr. Moore's opinion about Plaintiff's limitations in these areas, and the ALJ did not cite to or assess the evidence on which Respondent relies. Therefore, it not clear from the record that the ALJ's failure to consider Dr. Moore's opinion regarding Plaintiff's limitations in these areas was inconsequential to

the ALJ's ultimate determination that Plaintiff was not disabled.  See Tommasetti, 533 F.3d at 1038.

Nevertheless, the Court finds that the ALJ's error in failing to include Dr. Moore's opinion about Plaintiff's left upper extremity limitations as to gripping, operating hand controls and using tools, was harmless because, even with those limitations, Plaintiff can perform the jobs of inspector and sorter.

According to DOT 669.687-014, the job of dowel inspector involves "inspect[ing] dowel pins for flaws, such as square ends, knots, or splits, and discard[ing] defective dowels[,]" and requires fingering occasionally and handling frequently, and does not involve moving mechanical parts.  1991 WL 686074.

According to DOT 521.687-086, the job of nut sorter involves "remov[ing] defective nuts and foreign matter from bulk nut meat; [o]bserv[ing] nut meats on conveyor belt, and pick[ing] out broken, shriveled and wormy nuts and foreign matters, such as leaves and rocks" and "[p]lacing defective nuts and foreign matter into containers, requires fingering and handling frequently, and does not involve moving mechanical moving parts.  1991 WL 674226.

Plaintiff has failed to cite, and the Court has been unable to locate, any authority supporting Plaintiff's

assertion that the "frequent simple gripping" limitation

found by Dr. Moore (with respect to Plaintiff's left hand and

fingers) is more restrictive than the

frequent handling" requirement of the inspector and sorter

jobs.[7]  It does not appear as if Plaintiff's limitation to

"frequent simple gripping" with her left hand and fingers is

inconsistent with the "frequent handling" requirement of the

inspector and sorter jobs. Therefore, the ALJ's error in

failing to address (or ask the vocational expert about)

Plaintiff's limitation to "frequent simple gripping" with her

left hand and fingers was harmless.


    Moreover, there is nothing in the DOT descriptions of the

inspector and sorter jobs indicating any requirements of

operating hand controls and using tools.  Plaintiff relies on

the Occupational Information Network, commonly known as the

---

[7]    When Dr. Moore was asked to clarify his opinion in another
case in which a plaintiff was limited to "occasional and frequent simple
gripping," Dr. Moore stated:

        As it relates to further clarification of these terms, if
    the claimant were required to use gripping for performing
    activities such as using pliers or screwdrivers, he would be
    able to do this on an occasional basis, as this would require
    relatively strong gripping.  On the other hand, the claimant
    could frequently do such things as handle money, where
    gripping with full strength would not be required. . . . [¶]
    As it relates to a position such as a packager, this might
    prove to be difficult to the claimant, as forceful gripping
    would be required.  On the other hand, he would likely be able
    to operate a cash register, with a frequency required by a
    cashier, or do such things as punch out tickets and seipe
    credit cards, as would be required by a ticket seller or
    taker.

Granados-Dominguez v. Astrue, 2009 WL 3526579, *5 (C.D. Cal.).

14

O*NET, <u>Nguyen v. Colvin</u>, 2014 WL 2207058, *2, n.1 (C.D. Cal.), in an effort to show that the jobs of inspector and sorter involved the tasks of "using hand controls to start machines, adjusting processing equipment, and operating hand trucks and lifts." (<u>See</u> Joint Stip. at 5-6). However, Plaintiff does not cite to any authority holding that a federal court should or must rely on the O*NET to determine the requirements of particular jobs which an ALJ has found a claimant can perform. Indeed, the case Plaintiff cites -- <u>Lee v. Barnhart</u>, 63 Fed.Appx. 291, 293 (9th Cir. 2003)(Joint Stip. at 6), stating that "SSR 00-4p does not preclude reliance on the O-NET; it merely provides that where there is a conflict between the DOT and another source, and the ALJ relies on the other source, the ALJ must explain his reasons for doing so" -- is not applicable to the present case. Since it appears that Plaintiff's "slight difficulty operating hand controls and moderate difficulty using tools" with her left arm is not inconsistent with the operation of hand controls and use of tools requirements of the inspector and sorter jobs,[8] the ALJ's error in failing to address (or ask the vocational expert about) these limitations was harmless.

---

[8] Based on these findings, the Court does not need to address Defendant's alternative contentions regarding Plaintiff's unrestricted use of her right upper extremity.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 15, 2018

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE
